The next case is Cole, Inc. v. Dana Hotel, Inc. With the lawyers who are going to argue the case, please approach the bench. Introduce yourself to the court, please. Good morning, Your Honor. We can't hear you. That's not a microphone. No problem, no problem. Good morning, esteemed panel. My name is Lama Khorshid. I am representing that colony. Good morning, Your Honor. Richard Linton, L-A-M-D-E-N. On behalf of that plea, Dana Hotel, LLC.  The appellate, do you want to reserve some time for rebuttal? Yes, I do. The maximum time, please. Well, the maximum time is what you tell me you want to reserve. Five minutes. Okay. Thank you very much. You'll be fine. Let's proceed. Good morning, esteemed panel. My name is Lama Khorshid. I represent Cole, Inc., that colony. You really are. I have to lift your voice. Yes, yes. I hear some street noise over there. You've got to project it a little bit better. No problem. This matter is before you on appeal based on a decision made by the Honorable Judge Eileen O'Neill Burke on January 5th, 2015. There are two issues presented before you today, whether or not the court was proper in dismissing count one and count three of Cole's second amended complaint on a motion to dismiss. The trial court – Before you get into this, the issue of the release, was there really a release in one of these agreements? No, there was not, Your Honor. And why is that? The document, the separation agreement, does not mention the agreement being a release. There is no language in the agreement that specifies that it was a settlement, a release of any sort. The only mention to a release is in section 2.2 of the agreement, which specifies a release as it relates to the vendors under the prior existence of the restaurant management agreement. But in its totality, that separation agreement was not a release. It was called a separation agreement. It was simply a buyout of Cole's interest in Argent Restaurant LLC. Are you telling us there was no release language? Yes, there was no release language in the agreement to indicate that it was a release between both of the parties. May I proceed? So essentially what's before the court is whether or not the separation agreement was effective to waive any claims of a breach under the restaurant management agreement. So the court needs to keep in mind that the restaurant management agreement and the separation agreement are two different and distinct documents. The restaurant management agreement could be likened akin to a vendor agreement that the parties entered with one another for restaurant operation services. The separation agreement addressed the buyout of the parties' equity interests, namely Cole's, in the LLC. It was governed by a completely separate document, and that would have been the operating agreement that was incorporated into the separation agreement. Nothing in the separation agreement would make it effective based on the allegations made by Cole in its second amended complaint. First of all, there was no mutuality between the parties. Yes, Cole signed the agreement effective on March 25, 2013. However, beyond just a mere signature, the parties would have to go forward and perform any actions. Cole signed the agreement. They retained an accountant to review the financial documents, but the Dana Hotel did nothing in terms of showing its manifest intent to abide by the terms of the agreement. They didn't provide Cole with the necessary records that were mandated to them under Section 2.2 of the agreement, nor did they execute the agreement prior to Dana's, prior to Cole's managing principal, Sean Mulroney, terminating that agreement. Two is, you know, Cole canceled the separation agreement prior to Dana actually moving forward, as mentioned, with any of its allegations under the agreement. They terminated it on April 1st, and Dana was required to give Cole the necessary financial documents on March 28th, which it did not do. There was no consideration when Cole terminated the agreement. There had been no exchange of any monies to Cole. And the mere mention of consideration in the recitals does nothing to indicate that consideration was present. There was no exchange of any money. There was nothing that would benefit Cole. And then Dana didn't begin performing any of its obligations as of April 1st, so Cole was under every right to terminate the agreement. And not only that, the Second Amendment complaint also alleged that the Dana's, one of the Dana's managing principals, Jim Carnada, had told Sean Mulroney prior to that agreement that there was no way that Dana was willing to pay Cole a dime. But assuming, arguendo, that the court finds that the agreement was enforceable, it was still an executory contract, Dana would have to have performed under that contract. And it simply did not. It did not tender its signature. It did not show any manifest intent. And like I had mentioned before, it specifically made it clear to Cole that it would not pay Cole a dime under the agreement. So short of not manifesting any material intent to engage in the agreement, Cole was under every right to rescind the contract, to cancel it. You know, the other thing that was brought up earlier by Annabelle Gordon is whether or not, you know, assuming that it isn't, you know, Cole did perform, whether or not the agreement effectuated a release. And the answer is no. There's nothing in the agreement, no language in the agreement that says that the parties were entering into any sort of release, a settlement, you know, a waiver of any claims. There's nothing of that sort. By virtue of just pointing out to Section 3.2 where it defines what claims are, the court read into the fact that the document was a release. But nowhere in any of the pages of the separation agreement was there, you know, the manifest intent to be bound by a release. In addition, you know, if we were to look at the merger clause, which the trial court pointed out to in Section 9.9, essentially saying with respect to the subject matter thereof, you know, the merger clause only addressed the document or the subject matter of the document of the separation agreement, which was simply to buy Cole out of its interest. It was not meant to release and supersede any and all outstanding agreements. You know, the use of the, with respect to the subject matter hereof, indicates that the parties only wanted to speak to the subject matter hereof, which was the buyout. And then finally is count three of the second amended complaint was also dismissed based on the same reasons as the first count was dismissed. But additionally, the fact that it was posited that the Cole did not specify any factual allegations with particularity to put the data on notice of what the breach of fiduciary duty would have been. So number one is, just as argued previously, is the separation agreement was not effective as of the date that Cole signed it. Again, they rescinded it. There was no, there was no manifest intent on behalf of Dana to actually. So they rescinded it? Yes, rescinded it, or they canceled, they canceled the contract based on the fact that the Dana had not performed. So as of April 1st, they decided that they would not go through with the contract because there was no manifest intent under Dana to perform. Having said that is. Using the legal language, they decided that they weren't going to perform their part of the contract because the other side had reached their part. Yes, yes. And then, you know, moving forward is, you know, the allegations for the fiduciary claim were specified as best as they could. There were 23 factual allegations in count number three. Three of those factual allegations were based on the premise of under the information or belief. And so the argument is why those three factual allegations could not be pled with particularity is because they revolve around the financial matters of the Dana Hotel. And having said that is, since the Dana had jurisdiction over all of the accounting, all of the books and records, there was no way that COLE could, with pinpoint accuracy, plead in its complaint what the, you know, the accounting or the financial records would look like purely based on the fact that it didn't have access to those records. In fact, that's what it was requesting from the Dana. So having said that is, a ruling like that would make almost every, you know, every claim for breach of fiduciary duty where it stems around one party obstructing another party from financial records, unless that party pinpointed it with financial, pinpointed Del Monte with so much accuracy, they couldn't survive a motion to dismiss. And, you know, again, based on the 20 other factual allegations that are specified in count three, the Dana was put on notice as to what they would have had to have defended moving forward. And, again, as mentioned in the argument for count one, the separation agreement was simply not effective. So if that separation agreement was not effective and there was no specific language in the agreement effectuating any sort of waiver or release, then accordingly Cole did not waive or release the fiduciary claims from Dana. And that would be it. Any other questions? Okay. Thank you. Good morning. Tell me, was there a release here? Absolutely a release. And if you look at paragraph 3.2 and Judge Burke and now Justice Burke, and if you read. Tell me, what is the language that releases the claims? It's not the best drafted, but I think it's very good. Yeah, that's why you failed to tell him the release. No, I mean, I didn't draft it, but it. No, but tell me, what is the language you say there's a release? It defines. What words constitute a release? It starts off in Article 3 at the very top if you look at the separation agreement. Right before 3.1, Article 3 is entitled Resignation and Release. Then if you look at paragraph 3.2, it very broadly defines claims, demands, and causes of action. It couldn't be any broader. The essential argument for Judge Burke was it doesn't specifically refer to breach of fiduciary duty. That was her argument. If you look back at the briefs, it has equitable causes of action, legal, contract damages, any wage claims. And Judge Burke cited a case of equitable claims. A breach of fiduciary duty is an equitable claim, and even if it was a legal claim, it would be encompassed. And then if you look further along and ask yourself, was the release ever intended? And if you go down to Session 2.2, and it talks about consideration. Quote, in consideration of the serve of the Dana by coal, of the redeemed interest and other terms and conditions hereof, including the release and restrictive covenants. So it talks about the release, the parties clearly intended. It's in essence a settlement agreement. It would make no sense not to have some type of release. And if you look at the last whereas clause on page 1 of the separation agreement, it states the separation agreement further provides, quote, that Dana is willing to redeem coal's interest as partial consideration for releases and agreements set forth herein. So it's our position, even though you don't have a magic language saying the coal hereby releases Dana, that the parties clearly intended for the separation agreement to act as release. Well, a release is an abandonment of a claim a person has against whom the claim exists. Where is there language that shows that there is an abandonment of a claim? It certainly superseded and replaced the restaurant. I understand this in the subject of manifestation of thought process. But now let's see in the real language of the release, where are the words? It doesn't contain those words. I think you have to look at the document as a whole. You have to look at the allegations in the second amended complaint. You have to look at it. You have to infer. Somewhat, but I think it's a very reasonable inference. I think it's only a plausible inference. There's no reason that Dana would agree. Do you know any Illinois case that says that you could infer a release from a document? I think you have to look at the document, but I don't think you really need to infer it. I think it's right there, even though it might not have those four words. Well, if it doesn't have the words, then you'd have to infer it from the language. Do you know a case that says that? Not specifically on point, but I know there's a lot of cases saying you're allowed reasonable inferences. We cite case law saying a trial court's not required to strain done reasonable conclusions to try and find a cause of action in a complaint. I think here's what we have. I think you have to look at the whole context of this case. We started off with a restaurant management agreement. Coles to operate a restaurant inside the Dana Hotel. It was essentially a disaster. They lost money, so the parties got together. And if you look at their complaint in paragraph 26-2, I think that's sports release 2. According to Cole, in or around December of 2012, defendant and plaintiff began discussing the possibility of a negotiated buyout by a defendant of plaintiff's interest and margin, as well as negotiated termination of the restaurant management agreement. So the parties are terminating their relationship under the restaurant management agreement. It makes no sense for either party to retain any causes of action. The agreement specifically states that it replaces and supersedes the agreement, the restaurant management agreement. No, it doesn't say that. It doesn't say the restaurant management agreement. I'm sorry. It replaces and supersedes any agreements that were done in the same subject matter. And if you look in the separation agreement, it specifically refers to the restaurant management agreement. The whole purpose of the separation agreement was to end the parties' relationship and obligations under the restaurant management agreement. So I believe Judge Burke was correct that the two agreements, I don't think, are possible when mutually coexist. And you can see that by Cole's pleading. Cole pled count 3, I'm sorry, count 2. They pled an alternative of breach of the separation agreement. And there's a reason why they pled an alternative. They took out any allegations in count 2 with respect to the restaurant management agreement that those agreements cannot mutually coexist. And Cole recognizes that when they pled separate causes of action. And I know Cole makes a big deal, and I think they claim that somehow there wasn't mutual sin or mutual agreement for this. But I think Judge Burke ruled properly, looked at the complaint. They attached a fully executed agreement signed by both parties. It's signed by the Dana. They claim that they received the signed copy from the Dana on April 2nd. They admit they signed it on March 25th, 2013. We cite law in a brief shown that generally the effective date of a contract controls. Here you look at, I believe, 4.1. It says upon Cole's signatures of its principals, Mr. Mulroney and Julie Darling, that the obligations are, that they're obligated under the contract. And for Cole to maintain that there wasn't a meeting of minds, you really don't have to go any further than paragraph 27 of their own complaint. Cole states, after much negotiation, Plaintiff and Defendant agreed in principle to a so-called separation agreement, by which Defendant would take sole ownership of the origin, and Plaintiff would cease to be restaurant manager under RMA in exchange for payment of certain amounts to Plaintiff. So Cole admits the parties agreed in principle to the separation agreement. We have a fully executed contract attached to the compliance. You have Cole's admission that he signed an agreement on March 25th. In 4.1, the agreement states that when executed by Cole, Julie Darling, and Sean Mulroney, the agreement will have been fully and validly executed and delivered by them, and will constitute legal barrel in binding obligations upon them. This was done in this case. And I think an important thing that counsel brought up, too, in her argument, she talks about rescinding the contract and canceling the contract. We set forth in our brief that Cole states it was permitted to cancel a contract. In that argument, again, it reinforces exactly what our argument is. In order to rescind a contract, you must have a contract to begin with. And counsel just got up here and admitted that the separation agreement was a contract. They did not plead any count for rescission, if you look at their second amended complaint. They did not plead any count for anticipatory repudiation, as we set forth in our brief. We cite case law that says it's a distinct theory of recovery that must be pled. There's just no basis whatsoever to say the separation agreement was not a valid contract. Again, the court's not required to screen and come up with a cause of action. It's incumbent upon Cole to set forth facts in which a reasonable inference can be made that they state a breach of contract under the separation agreement. So, in summary, we believe Justice Burke was entirely correct in granting our 2615 motion that most of Cole's arguments really relate to alleged breaches of separation agreement. You know, we're talking about less than a week, the conduct they're complaining about. They claim the contract was signed on March 25th. And all of a sudden, on April 1st, they claim we haven't gotten everything that's required under the separation agreement. We're talking like a five or six day period, if you look at their allegations. You know, trying to make my client look bad. There was one thing I'm just recalling. In fact, there was one thing your client had done, given them some material by the 28th of March, I think, so that they could determine the fair price for selling out their interest. I think that that was the one thing that they were doing. That's a good question because we didn't get past the motion dismiss stage. But it's our contention they had that information. And number two, what we're talking about are potential breaches in which they brought accounts for breaches of separation agreement. All their arguments essentially relate to alleged breaches of separation agreement. They do not relate to contract formation accounts. But I think they admitted that somehow they rescinded a contract even though they didn't plead it. Again, in order to rescind a contract, you must have a contract in the first place. But even if there's a contract, even if there is a separation agreement contract, even if it's effective on the date that it was signed, the issue for me is really whether it supersedes the earlier agreement by its term. If we assume with the second argument that there is a separation agreement, does that agreement expressly release the, I can't think of the name of the company, from the SMA? Those are good questions. In our position, it absolutely does. The separation agreement contains an integration clause, as I think Justice Gordon pointed out. And it says it represents, and I'm trying to paraphrase, between the parties, it replaces and supersedes any prior agreements in the same subject matter. And if you look at the separation agreement and compare that with the restaurant management agreement, they both relate to the same subject matter. The only thing that Medina and Cole had in common was large and restaurant. This entire separation agreement, under the separation agreement, Cole resigned as manager of Argent. It shut down. Dana agreed to pay down the prices calculated under the separation agreement for their management. And what happened at Argent? So both contain or concern and relate to the very same subject matter. And then if you go back again, if you look at paragraph 26 of Cole's second amended complaint, Cole specifically says, in and around December 2012, defendant and plaintiff began discussing the possibility of a negotiated buyout by defendant and plaintiff's interest in Argent, as well as a negotiated termination of RMA, the restaurant management agreement. So Cole admits that this entire purpose of the separation agreement was a negotiated termination of the restaurant management agreement. So we believe Judge Burke was right, that her decision should be upheld by this court. And I don't know if you have any questions at all I can try and answer for you? No? Okay. Thank you, judges. Esteemed panel, why is opposing counsel asking this court to look and read into the parties intent? Lawyers don't do that. The parties do that. And that's why it should, you know, the allegations should have survived the motion to dismiss. What lawyers do do is they read a contract carefully and precisely. Absent any language in the separation agreement, whereby Cole waived any of its claims against the Dana under the restaurant management agreement, the lawyers cannot impute the intent of the parties. The parties do that via discovery. In addition, section 2.2 of the separation agreement calls for a calculation. That calculation is based on the restaurant management agreement being alive and well as the date of the effective date. If we terminated the restaurant management agreement on the effective date, we would never be able to perform the calculation. So by pure common sense, this could have never happened. And then can we really call the language a release just by virtue of there being a definition in the separation agreement of what a claim and a release is? Can we call language expressly a release if it's mentioned in passing in the recitals? We can't do that. In addition, you know, one of the things that opposing counsel points out is conditions precedent. That Cole had to have signed the agreement for the agreement to be effective. But condition precedent claims that there was actually a contract that had been formed prior to my client canceling it. And that's not what was being alleged in the second amended complaint. The second amended complaint alleges that there was no contract formed. So there could be no conditions precedent to a contract that was never formed. In addition, you know, one of the things that opposing counsel also tries to do is to define what the meaning of the subject matter hereof with respect to the merger clause in section 9.9 based on his understanding of what the subject matter hereof is. And again, we can't really determine what the party's intent is. If we just look to the agreement itself, it's a separation agreement for a buyout for the equity interest of Cole. It was nothing more than that. The restaurant management agreement is an independent agreement. The separation agreement was an agreement to buy out the equity interest in our giant restaurant LLC. And for these reasons alone, Cole respectfully requests that the honorable court vacate the trial court's January 15th order granting motion to dismiss of Dana Hotel's complaint in its entirety and remand the case back to the trial court for further proceedings. I'm open for any questions that the panel has. Thank you very much. Thank you very much. We'll take this case under advisement and the court is adjourned.